<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| SEDRICK PIERRE, | : | Civil No.: 08-3669 (RMB) |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **O P I N I O N** |
|  | : |  |
| WARDEN JEFF GRONDOLSKY, | : |  |
|  | : |  |
| Respondent. | : |  |
|  | : |  |

**APPEARANCES:**

> SEDRICK PIERRE, Petitioner <u>Pro</u> <u>Se</u>
> #25001-077
> F.C.I. Fort Dix
> P.O. Box 2000
> Fort Dix, NJ 08640

> IRENE E. DOWDY, AUSA
> OFFICE OF THE U.S. ATTORNEY
> 401 Market Street, Fourth Floor
> Camden, New Jersey 08101
> Counsel for Respondent

**BUMB,** District Judge

On or about July 22, 2008, petitioner, Sedrick Pierre ("Pierre"), filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in which he challenges a prison disciplinary proceeding. Pierre asks the Court to expunge the disciplinary finding and sanctions imposed against him. The named respondent is FCI Fort Dix Warden Jeff Grondolsky. Respondent Grondolsky answered the petition on December 15, 2008,

and provided a copy of the pertinent administrative record. (Docket Entry No. 5).  On January 5, 2009, Pierre filed a reply to respondent's answer.  (Docket Entry No. 8).

## I.  **BACKGROUND**

Pierre challenges a November 2007 prison disciplinary finding, which resulted in the loss of 27 days good conduct time ("GCT").  He seeks to have the incident report and disciplinary finding expunged, and to restore the 27 days loss of GCT.

Pierre is presently serving a 240-month prison sentence imposed by the United States District Court for the Northern District of Texas, on July 20, 1994, following his conviction on charges of conspiracy to possess with the intent to distribute cocaine, and the use of the telephone to facilitate a drug trafficking crime.  His projected release date is May 14, 2011, assuming Pierre earns all GCT available to him.

The incident at issue in this habeas petition occurred while Pierre was designated to FCI Seagoville, Texas, and housed at the Satellite Camp associated with that prison facility.  In June 2007, the Bureau of Prisons ("BOP") Special Investigative Services ("SIS") staff at FCI Seagoville began receiving information that at least four Camp inmates were regularly leaving the Camp grounds late on Thursday nights after the midnight count and returning before the next count.  There was suspicion that some of the inmates were bringing contraband in

the compound (mostly tobacco) and receiving money orders for same.  The source providing this information to the SIS stated that Pierre was not one of the inmates involved in the contraband and that Pierre had only left the Camp a few times.  (See Declaration of Robert Kehoe at Exhibit 3, pp. 4-5, SIS Memorandum).

On Friday, July 6, 2007, the BOP staff conducted unscheduled counts of the Camp inmates during the early morning shift at 1:20 a.m. and 1:30 a.m.  Pierre and another inmate were not in their beds and were unaccounted.  The BOP staff conducted a search of the Camp and its surrounding area and did not find the two inmates.  Then, at 2:55 a.m., Pierre was apprehended as he was coming from underneath the fence of a salvage yard.  (Id., SIS Memorandum at pp. 3-4).

On September 18, 2007, an Incident Report, No. 1646407, was issued by SIS Tech. C. Walden.  The report charged Pierre with Code 200 violation, "escape ... from Open Institutions (minimum) and from outside secure institutions - without violence." (See Kehoe Decl., at Ex. 1, p. 1, Box 9, Incident Report).  In particular, the report stated:

> On 09/12/07, an investigation was completed which revealed sufficient evidence to substantiate the charge of escape against inmate Pierre.  Specifically, on 07/07/07, inmates ... and Sedrick Pierre, were discovered attempting to return to the Camp grounds by Officer D. Montgomery.

(Id., Incident Report, Ex. 1, p. 1, Box 11).

Pierre received the Incident Report on September 19, 2007, and he acknowledged that he understood his rights. Pierre denied the allegations in the report and said he had nothing to do with the other inmate. The matter was referred to the Unit Disciplinary Committee ("UDC"), which conducted a hearing on September 20, 2007. Because the UDC recommended the loss of GCT as a sanction, the matter was referred to a Disciplinary Hearing Officer ("DHO"). On September 20, 2007, Pierre was given notice of the DHO hearing, a written statement of his rights at that hearing, and was told that he had the right to a staff representative at the hearing, as well as the right to call witnesses and present documentary evidence at the hearing. Pierre requested Gail Stephens as his representative, but did not ask for any witnesses at that time. Pierre also signed an acknowledgment of his rights on September 20, 2007. (Id., Incident Report, Ex. 1 at pp. 1-5, boxes 14-27).

Sometime after the matter was referred to the DHO, the DHO requested that the reporting officer, Walden, clarify the incident. (Id., Ex. 1 at p.1). Walden submitted a rewritten Incident Report on October 9, 2007, which stated as follows:

> On October 9, 2007, an investigation was completed which revealed sufficient evidence to substantiate the charge of escape against inmate Pierre.
>
> Specifically, on the morning shift of 07/06/07, at approximately 1:20 a.m., a census count was conducted at the SCP. With two inmates out-counted to the Powerhouse, there should have been a count of 158 inmates at the SCP. At 1:30

4

> a.m., a bed book count was initiated and completed at 1:51
> a.m.  After verification with the FDC Control Center, it was
> determined inmates ... and Sedrick Pierre, 25001-077, were
> unaccounted for.
>
> An internal search of the Camp and the area surrounding the
> SCP was conducted with negative results.  At ... 2:55 a.m.,
> in ate ... Pierre ... [was] apprehended as [he was]
> attempting to re-enter the Camp.  Inmate Pierre departed
> from custody without permission or authority.
>
> (Kehoe Decl., Ex. 2, p.6, box 11).

Pierre was provided a copy of the rewritten Incident Report on

October 17, 2007 and acknowledged receipt of the report and his

rights.  After having the report read to him, Pierre stated:

> This is the same report I was given before.  I gave the
> [SIS] investigators my statement and I see they didn't add
> it.  I will give you another one.  I never escaped from
> anywhere.  I was found out of bounds that is all.  I don't
> know anything about where [another inmate] lives.

The matter was again referred to the UDC for an initial hearing.

(Id., Ex. 2, pp. 6, 8, boxes 14-16, 22-27).

The second UDC hearing was held on October 19, 2007, and the

matter was referred to the DHO because of the recommended loss of

GCT.  Pierre again was given written notice of the DHO hearing

and his rights, which he acknowledged by signature on October 19,

2007.  Pierre requested that Gail Stephens be his staff

representative, and requested Correctional Officer D. Montgomery

as a witness.  Pierre presented written questions for Officer

Montgomery.  (Id., Ex. 2, pp. 7, 9-11, 15, 16).

The DHO hearing first convened on October 23, 2007.  Pierre

gave an oral statement at the DHO hearing, as follows:

> I went outside after the [midnight] count for some peace of
> mind due to ongoing personal family problems.  I was in the
> barnyard alone.  No one was with me.  I was there for about
> forty minutes.  It was about 1:15 or 1:20 a.m.  I watched
> Correctional Officers Montgomery and Llwellyn go to the
> handball court and look over the wooden fence.  They did not
> search the barnyard.  I did not know they were looking for
> me.  Then I saw them apprehend [another inmate].

(Id., Ex. 2, p. 2).  Pierre also gave the DHO copies of his
written statements to the SIS investigators and his written
response to the Incident Report.  Pierre's statements alleged
that he had walked out the side door of the Camp building for
solitude; that he walked into the barnyard so he would not be
seen by other inmates; that if the SIS investigators checked the
trailer in the barnyard they would likely find his night-light
because he had been inside the trailer for some time.  Pierre
further asserted that the barnyard was "on the Camp's
grounds/property."  (Id., Ex. 2, pp. 12, 14).

The DHO read aloud at the hearing Officer Montgomery's
written responses to six of Pierre's questions.  Pierre noted
that he had submitted eight questions and it appeared that the
last two were not copied.  Despite the missing questions and
responses, Pierre wanted to proceed.  He asked that Officer
Montgomery answer Pierre's last two questions, but the DHO
determined that Montgomery should answer only the additional
question, "Did you search the barnyard?", because the two
questions posed security concerns as they sought responses that
would divulge the specifics of institutional search procedures.

6

Officer Montgomery was not on shift on the day of the DHO hearing, so it was agreed that the DHO hearing would be suspended and rescheduled so that Montgomery could provide a written response to the last question. (Id., Ex. 2, p. 2).

The DHO hearing reconvened on November 15, 2007, with Robert Kehoe serving as the DHO because the first DHO was unavailable, and the DHO wanted to afford Pierre with a more timely hearing. Montgomery's answer to the additional question about searching the barnyard was read aloud at the hearing. The written response stated that Montgomery did not "physically search" the barnyard or institutional storage area because that area is not part of the Camp. The DHO then orally summarized the SIS Report and memoranda and attachments pertaining to Pierre. Pierre gave an additional statement to DHO Kehoe:

> I never left. I never went anywhere. I do go to the barnyard to relax and get away from others. I do have personal issues that I do not care to share with the BOP. I've been in here 82 days. This is punitive. Others have gone before the DHO but not me. I don't even know the other inmates they say I am involved with in this incident.

(Id., Ex. 2, p. 2).

After considering the rewritten Incident Report, Pierre's statements to the investigating lieutenant, to the UDC, at the hearings and his written statements, Officer Montgomery's written responses to Pierre's questions, and those portions of the SIS investigation report pertaining to Pierre, the DHO found that Pierre had committed the prohibited act of Escape from an Open

7

Institution (minimum and outside secure institutions, in
violation of Code 200.  The DHO specifically relied on the
following evidence:

> - according to the SIS Report, on July 6, 2007, Pierre (and
> another inmate, separately) had been discovered re-entering
> the Camp grounds.
>
> - according to a memorandum accompanying the SIS Report, at
> 1:20 a.m. on the date in question, Correctional Officer
> Llewellyn assisted in a census count at the Camp, and at
> 1:30 a.m. he assisted in a picture card count.  Pierre was
> absent from the Camp building for those counts.
>
> - according to a witness statement accompanying the SIS
> Report, Correctional Officer Montgomery stated that Pierre
> had been discovered coming from under the barnyard fence.

(Id., Ex. 2, p. 4, referencing Ex. 3, pp. 8-11).

The DHO also took into account Pierre's denial of the Code
200 violation, but noted that Pierre provided no evidence to
contradict the observations of the reporting officer or the
description of the incident, namely, that Pierre had been absent
during the 1:20 and 1:30 a.m. counts, and that at 2:55 a.m.,
Pierre had been observed crawling from underneath the fence
surrounding the salvage yard, on his back, entering the weight
area of the Camp.  The DHO further noted that Pierre admitted
that he had been outside, and that although Pierre stated that he
was outside for only 45 minutes, he actually was gone for an hour
and 35 minutes (after the 1:20 a.m. count through 2:55 a.m. when
he was located, five minutes before the 3:00 a.m. count).  Based
on this evidence, the DHO determined that Pierre had departed

8

from custody without permission or authority, in violation of Code 200. (<u>Id</u>., Ex. 2, p. 4).

The DHO imposed disciplinary sanctions against Pierre, including 27 days forfeit of GCT, and 180 days loss of commissary, visitation and telephone privileges. The DHO also recommended a transfer for Pierre. He explained his reasons for the sanctions as follows:

> The action/behavior of any inmate to escape from any facility creates an inability of the Bureau of Prisons and assigned institution to maintain proper inmate accountability at all times. Inmates in escape status demonstrate an inability to handle the responsibility required of them for assignment to a camp, furlough, and/or furlough transfer. The sanction(s) imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.

(<u>Id</u>., Ex. 2, p. 5). Pierre was given a copy of the written DHO report on or about December 14, 2007. (<u>Id</u>.)

The respondent concedes that Pierre has exhausted all of his administrative remedies before pursuing this federal habeas petition. In particular, the Government notes that in Pierre's Regional Administrative Remedy Appeal, Pierre submitted an Inmate Request to Staff after the November 15, 2007 DHO hearing, as follows:

> Several weeks ago I spoke with Asst. Warden Boyle regarding the question, "was the barn-yard the Camp's property" and she affirmed to me that it was and that I should contact you to get this in writing. ... I would greatly appreciate it if you could provide me a simple state, as to the Barn-yard.

(Declaration of Tara Moran, Exhibit B, p. 13).  The Program
Coordinator responded:

> This is in response to your ... question of "Was the barn-
> yard the Camp's property?"  If you are referring to the
> salvage yard behind the camp as the "barn-yard," this
> property is considered institution property, but is
> considered outside the secure perimeter of the camp.

(Id., Ex. B at p. 14).

On March 17, 2008, the Regional Director denied Pierre's
appeal, stating in pertinent part:

> The record of this disciplinary action reflects you were
> advised of your rights and afforded the opportunity to
> exercise those rights in accordance with Program Statement
> 5270.07, Inmate Discipline and Special Housing Units.  After
> thorough review of the incident report, the investigation,
> the evidence, and related documentation, there appears to be
> sufficient evidence to support the DHO's decision.  The
> sanctions imposed are within policy and commensurate with
> the finding that you committed a prohibited act in the High
> severity category.
> ...
> You contend the DHO violated your rights to due process.
> However, you show no evidence you were not afforded the
> appropriate rights before the DHO.  Additionally, you
> admitted you were walking toward the fence when you noticed
> staff were looking for you.  There is no indication of
> prejudice by the DHO as a result of the finding.

(Id., Ex. B, p. 3).

Pierre then submitted an appeal to the BOP's Central Office.
The BOP's Administrator of National Inmate Appeals denied the
appeal in a written response dated April 28, 2008.  (Id., Ex. C).
Pierre filed this habeas action on or about July 22, 2008.

10

## II.  <u>CLAIMS PRESENTED</u>

Pierre claims that he was denied due process in violation of the Fifth Amendment.  He specifically alleges (1) that "escape" is not defined as an inmate going out-of-bounds after the count; (2) that the barnyard where he was is part of Camp property; (3) that he had no intention of escape; (4) that the greater weight of evidence shows that he did not "escape"; (5) that the DHO based his decision on mere speculation and hypothetical theory, which was an abuse of discretion; (6) the incident report is misleading because it characterizes Pierre's action as "attempting" to return to Camp grounds; (7) that Pierre was denied the opportunity to call the witness, Officer Montgomery, at the DHO hearing, without sufficient justification; (8) the DHO refused to provide Pierre with a written copy of Officer Montgomery's responses to Pierre's written questions; (9) that the DHO placed evidence of contraband and other irrelevant evidence pertaining to the investigation of other inmates in Pierre's record; (10) that DHO Kehoe was not impartial; and finally (11) that the postponement of his DHO hearings subjected him to punitive detention of 132 days.

In his traverse, Pierre further argues that, at most, he may have violated Code 316, being in an unauthorized area, or in an "out-of-bounds" area.  The salvage yard where Pierre was is considered "out-of bounds" to Camp inmates after 9:00 p.m.  He

11

also points out that he had an "impeccable" record for 14 years in prison, and 3½ years in Camp, so why would he attempt to "escape" only three years before his release.  He complains that he was not permitted to see the SIS investigation report, and that the use of an informant to support the charge is not reliable.  Finally, Pierre argues that the SIS investigation centered on the issue of contraband being brought into the Camp by other inmates with whom Pierre had no involvement, but this information became part of Pierre's record and was used against him to find him guilty of escape.

The respondent counters that Pierre was afforded all the process to which he was due and there was "some evidence' to support the finding of guilt on the charge of escape.

### III.  DISCUSSION

A.  Standard of Review

Pierre seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).[1]  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of

---

[1]  United States Code Title 28, Section 2241, provides in pertinent part:

(a) Writs of habeas corpus may be granted by the district courts within their respective jurisdictions

(c) The writ of habeas corpus shall not extend to a prisoner unless-    (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

the Constitution or laws or treaties of the United States."  28

U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than

more formal pleadings drafted by lawyers.  See Estelle v. Gamble,

429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520

(1972).  A pro se habeas petition and any supporting submissions

must be construed liberally and with a measure of tolerance.  See

Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v.

Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United

States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert.

denied, 399 U.S. 912 (1970).

B.  Applicable Regulations

The Federal Bureau of Prisons ("BOP") has specific

guidelines for inmate disciplinary procedures, which are codified

at 28 C.F.R. § 541.10 et seq.  Prohibited acts are categorized

according to the severity of the conduct.  Code Level 100s are

deemed the "Greatest", code level 200s as "High", and proceeding

to 400 level codes as "Low Moderate."  The Prohibited Acts Code

and Disciplinary Severity Scale is set forth at 28 C.F.R. §

541.13 Tables 3-5.  Incident reports are prepared in accordance

with § 541.14 and are referred to the UDC for an initial hearing

pursuant to § 541.15.

The UDC hearing is typically conducted within three working

days of the incident, but may be extended for good cause pursuant

13

to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because the charge was designated as a "High" category offense and the UDC does not have the authority to disallow good conduct time.  Disallowance of good conduct time credits for high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d).  The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. §

14

541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

C.  Merits of Petitioner's Claims

1.  *There Was No Denial of Procedural Due Process*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S. Const. amend. XIV.  In Wolff v. McDonnell, supra, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von

15

Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).
However, in Wolff, the Supreme Court held that, while prisoners
retain certain basic constitutional rights, including procedural
due process protections, prison disciplinary hearings are not
part of criminal prosecution, and an inmate's rights at such
hearings may be curtailed by the demands and realities of the
prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396,
1399 (3d Cir. 1991).

     Here, this Court finds that all the requisite standards set
forth in Wolff and Von Kahl have been satisfied in this case.
Pierre received timely notice of the charge against him.  He
requested and received staff representation at his DHO hearing.
He asked that Officer Montgomery appear as a witness to answer
specific questions, which was done in writing with the exception
of two questions that posed a security concern as determined by
the DHO.  Pierre proffered two written statements given during
the SIS investigation and in response to the Incident Report, and
he made oral statements at both DHO hearings.  He received a
written DHO report with attachments that documented the DHO's
findings, and which Pierre was able to use to prepare and timely
file his administrative appeals.

     This Court also finds that Pierre was not denied due process
with respect to Pierre's claim that he was not allowed to call
Officer Montgomery as a witness in person at his DHO hearing.

16

There is no requirement that in-person testimony must be presented by BOP personnel.  Indeed, prisoners do not have a constitutionally-protected due process right to confront and cross-examine witnesses in disciplinary hearings where there is a concern for institutional safety and security.  See Wolff, 418 U.S. at 569-70.  Here, Pierre was able to question Officer Montgomery by written interrogatories.  He presented detailed questions in writing and the officer responded in kind.  The answers were read aloud at the DHO hearings, so Pierre had the benefit of Montgomery's answers for reply even if he did not have a copy of the handwritten responses before the DHO hearing.

This Court also rejects Pierre's contentions that he was denied due process when the DHO hearing was adjourned and because he did not receive copies of the SIS investigation report and supporting memoranda before his DHO hearing.  First, there is no requirement that an inmate be given copies of evidence before a DHO hearing; the only requirement is that the inmate be given advance written notice of the disciplinary charges against him. The record here shows that Pierre received advance written notice of the charges against him well in advance of his DHO hearing, in accord with 28 C.F.R. §§ 541.15(a), 541.17(a).  Moreover, it is plain that the SIS investigation report and supporting memoranda are investigatory and highly sensitive documents that cannot be provided to an inmate without causing a security concern.  The

17

DHO summarized the pertinent parts of the report as it pertained to Pierre at the hearing, and he included a summary description of the information from the SIS report on which he relied in his written DHO Report.  Consequently, Pierre received timely written notice of the charges against him, all that due process requires in prison disciplinary proceedings.

As to the delay in the DHO hearings, the record shows that the hearing was adjourned to afford Pierre the opportunity to have a response to his last question to Officer Montgomery. Officer Montgomery was not on duty on the day of the first DHO hearing.  Also, the initial DHO hearing was adjourned because the first DHO needed clarification of the incident report, apparently to confirm that Pierre's incident was not related to the broader SIS investigation concerning inmates leaving the Camp and bringing in contraband.  These adjournments do not demonstrate bias on the part of the DHOs as alleged by Pierre.  In fact, it is evident that the adjournments were for Pierre's benefit in defending against the charge of escape.  Further, the change in DHOs, with which Pierre takes issue, was simply to avoid further delay of the second hearing because the first DHO was unavailable.  Pierre has failed to show any evidence of bias or partiality by these DHOs.  Accordingly, this Court finds no due process violations with respect to the hearing adjournments or the conduct of the DHOs.

Finally, Pierre argues that the DHO relied upon "fabricated" and "irrelevant" evidence relating to other inmates in reaching a determination of guilt as to Pierre. This contention is completely baseless. The DHO made it clear that he relied on the SIS report only as it pertained to Pierre. All information concerning other inmates and other allegations of routine escapes and the issue of contraband were redacted and were not discussed or presented at the DHO hearing or in the DHO report. Therefore, this Court finds no grounds to support Pierre's argument that he was denied due process in this regard.

In sum, this Court concludes that Pierre has not demonstrated any denial of due process as alleged, and all of his claims in this regard will be denied for lack of merit.

2. *There Was Sufficient Evidence to Support the Charge*

Pierre principally challenges the sufficiency of the evidence relied upon the DHO in finding that Pierre had committed the prohibited act of Escape from an Open Institution and from outside secure institutions in violation of Code 220. It is clear from the record provided herein that the DHO's finding was amply supported by the requisite evidentiary standard of "some evidence" as set forth in <u>Superintendent v. Hill</u>, 472 U.S. 445 (1985).

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary

19

board are supported by some evidence in the record." Hill, 472
U.S. at 454-55; Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir.
1991).  The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly
> charged atmosphere, and prison administrators must
> often act swiftly on the basis of evidence that might
> be insufficient in less exigent circumstances.  The
> fundamental fairness guaranteed by the Due Process
> Clause does not require courts to set aside decisions
> of prison administrators that have some basis in fact.
> Revocation of good time credits is not comparable to a
> criminal conviction, and neither the amount of evidence
> necessary to support such a conviction, nor any other
> standard greater than some evidence applies in this
> context.

Hill, 472 U.S. at 456 (internal citations omitted).  Moreover,
the Court stated:  "The Federal Constitution does not require
evidence that logically precludes any conclusion but the one
reached by the disciplinary board.  Instead, due process in this
context requires only that there be some evidence to support the
findings made in the disciplinary hearing." Id. at 457.

Here, there is sufficient evidence noted by the DHO in
reaching his determination.  The DHO's Report demonstrates that
the DHO considered and relied upon the following evidence in its
determination that petitioner committed the Prohibited Act 200
(escape):  (1) BOP officers conducted a census count of the Camp
inmates at 1:20 a.m. and a bed count at 1:30 a.m., which
disclosed that Pierre was unaccounted for; (2) a search was
conducted by the BOP officers of the Camp and the area
surrounding the Camp without locating Pierre; (3) Pierre was

20

apprehended at 2:55 a.m. by Officer Montgomery as Pierre was observed crawling back into the Camp from underneath the fence of the salvage yard or "barnyard"; and (4) Pierre had departed from custody without permission or authority.  (Kehoe Decl., DHO Report at Ex. 2, p. 4, Box V).

Specifically, the DHO found:

The DHO took into account [Pierre's] denial of the charge, the supporting memorandum from J.G. Leap, Special Investigative Supervisor, and the written documentation from the reporting staff member, as well as collaborative evidence collected by the SIS department.  You contend you did not escape from custody.  However, you provide no evidence which would diminish the reporting staff member's observation and statement of the incident.  A census count and a bed book count were conducted at 0120 and 0130 respectively and you were absent from those counts.  An internal search of the Camp and the surrounding area was conducted with negative results.  You stated you were outside for approximately forty-five minutes.  However, you were located at 0255, one hour and thirty five minutes after staff began to look for you, and five minutes before the scheduled 0300 count.  You were discovered coming under a fence from the barnyard, an area that is adjacent non-Bureau of Prisons.  It has been determined that you departed from custody without permission or authority before your release.  Therefore, the DHO after considering all the facts and evidence at the DHO hearing has made the determination the greater weight of evidence indicated you did commit the prohibited act of Escape from an Open Institution (Minimum) and from Outside Secure Institutions, Code 200.

(Id.)

Thus, the DHO's Report plainly shows that it was "not so devoid of evidence that the findings of the [DHO were] without support or otherwise arbitrary."  Hill, 472 U.S. at 457.  There was more than sufficient evidence to support the DHO finding that Pierre had violated Code 200.

Further, this Court finds no merit to Pierre's arguments
that the charge of escape cannot be supported by definition.
Pierre contends that he merely went "out-of-bounds" after the
count and that he had no intention of escaping the Camp.  He also
argues that the barnyard where he was found is part of Camp
property, and only "out-of-bounds" to Camp inmates after 9:00
p.m.  Consequently, at most, Pierre could be charged with a Code
316 violation, being in an unauthorized area, not escape.

However, Pierre has provided no evidence to support these
contentions.  Officer Montgomery stated unequivocally that the
salvage yard or barnyard area was not part of the satellite Camp.
Even after the DHO hearing, when Pierre tried to obtain
verification from BOP staff that the barnyard was considered part
of the Camp property, the Program Coordinator confirmed that the
fenced-off storage area is considered institution property, "but
is considered outside the secure perimeter of the camp."  (Moran
Decl., Ex. B, p. 14).

Pierre now argues that because the barnyard area is
institution property, he was merely "out-of-bounds" and could not
be deemed as escaping.  Accordingly, Pierre suggests that Code
200 is unconstitutionally ambiguous.  This Court finds no merit
to this argument, and instead agrees with respondent that Code
200 is constitutionally adequate in defining escape.  Courts have
long recognized that the degree of specificity in proscribing
conduct is not as strict in the context of prison discipline as

it is for imposing criminal sanctions.  <u>See</u>, <u>e.g.</u>, <u>Meyers v.</u>
<u>Alldredge</u>, 492 F.2d 296, 310-11 (3d Cir. 1974)(prison code
prohibiting "conduct prejudicial to good order, security and
safety" deemed constitutionally adequate; "legalistic wrangling
over whether a rule was broken may visibly undermine the
administration's position of total authority, necessary for
security's sake")(citations omitted); <u>accord</u> <u>Hadden v. Howard</u>,
713 F.2d 1003, 1008-09 (3d Cir. 1983).

　　　　Therefore, based upon this evidence as relied upon by the
DHO, and without any sufficiently credible contradictory evidence
submitted by Pierre, except his self-serving argument that he did
not intend to escape and was merely "out-of-bounds", this Court
finds that Pierre's right to due process was not violated by the
determination of the DHO.  This Court finds no bias or abuse of
discretion by the DHO in reaching his determination that Pierre
committed the prohibited act of escape in violation of Code 200.
Pierre's admitted and knowing unauthorized departure from custody
patently is the essence of "escape."  The record clearly supports
the DHO's finding that Pierre could have "reasonably understood
that his contemplated conduct was prohibited" pursuant to Code
200.  The procedures enunciated in <u>Wolff</u>, supra, were complied
with, and there was "some evidence", in accordance with <u>Hill</u>,
<u>supra</u>, to support the DHO's finding of guilt.  See <u>Sinde v.</u>
<u>Gerlinski</u>, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is
'some evidence' to support the decision of the hearing examiner,

the court must reject any evidentiary challenges by the plaintiff")(quoting <u>Hill</u>, 472 U.S. at 457).

Therefore, there is no basis to expunge the incident report and sanctions imposed because Pierre has not proven that he was denied due process or that there was insufficient evidence to support the disciplinary finding.  Accordingly, this habeas petition will be denied for lack of merit.

<u>**CONCLUSION**</u>

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit. An appropriate Order accompanies this Opinion.


                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    United States District Judge

Dated: July 31, 2009

24